**HOBBY et al. v. KING TRAILER CO.**
**(No. 3070.)**

(Court of Civil Appeals of Texas. Texarkana. May 25, 1925. Rehearing Denied June 11, 1925.)

1. **Principal and agent ⟶103(3)—Manager of partnership, formed solely to deal in certain auto trucks by wholesale, not authorized to purchase trailers.**

Manager of partnership, formed solely to deal in auto trucks of certain make by wholesale, would have no authority to purchase commodities, such as trailers, not within scope of business intrusted to him.

2. **Appeal and error ⟶927(7)—Truth of defendant's contention assumed on appeal from judgment on directed verdict for plaintiff.**

On appeal from judgment on instructed verdict for plaintiff, in action for price of auto trailers, appellate court must assume truth of defendant's contention that defendant's agent did not have actual authority to make purchase.

3. **Principal and agent ⟶99—Principal's liability for agent's acts, within scope of apparent authority, based on equitable estoppel.**

Judicial recognition of apparent authority, as basis of principal's liability for agent's unauthorized acts, rests on doctrine of equitable estoppel, right to invoke which depends on facts of each particular case.

4. **Principal and agent ⟶124(3) — Whether seller's agent was misled by apparent power of buyer's agent held for jury.**

Whether agent, who sold auto trailers to manager of partnership dealing in trucks of certain make by wholesale, was misled by any apparent power conferred on manager by his principals, held for jury.

5. **Banks and banking ⟶171(7)—Bank forwarding draft drawn on consignee of goods by drawee of draft received with bill of lading held liable for conversion.**

Bank substituting and forwarding for collection draft drawn by company, on which draft, received by bank with bill of lading, was drawn for price of auto trailers shipped on such company's order to company on which it drew substituted draft, instead of returning original draft and bill of lading to drawer, or giving proper notice and asking further instructions, when payment was not made within reasonable time after demand, held liable for conversion of original draft and bill of lading or

⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

goods represented thereby, on refusal of consignee to accept shipment.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by the King Trailer Company against Edwin Hobby and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Leake, Henry, Wozencraft & Frank and Spence, Haven, Smithdeal & Spence, all of Dallas, for appellants.

Etheridge, McCormick & Bromberg, of Dallas, for appellee.

HODGES, J. In November, 1917, the appellants Edwin Hobby and T. L. Camp were doing business in Dallas, Tex., as a partnership, under the firm name of Denby Truck Company of Texas. They had the general agency for the sale of the Denby auto trucks in Texas, with the exception of a few counties. The affairs of the partnership were under the direction and control of C. N. Burg as general manager. On November 20, 1917, Burg ordered, from the King Trailer Company of Ann Arbor, Mich., eight auto trailers, in the name of the Denby Truck Company of Texas. He directed that the trailers be shipped to W. P. Bevans at Menard, Tex., with a draft on the Denby Truck Company of Texas attached to the bill of lading. The shipment was made as directed, under a shipper's order bill of lading, with instructions to notify W. P. Bevans & Co. A draft on the Denby Truck Company of Texas for the purchase price, $2,793.60, was attached to the bill of lading and sent by mail to the Security National Bank of Dallas for collection. The draft was accompanied by a letter instructing the Security National Bank to deliver the bill of lading to the Denby Truck Company of Texas upon payment of the draft. When the draft was received at Dallas by the Security National Bank, Burg was notified. He did not pay the draft, but drew another on W. P. Bevans & Co. for the price they were to pay the Denby Truck Company of Texas. That draft was by the bank attached to the bill of lading, and forwarded to Menard for collection. Bevans & Co. refused to accept the shipment or to pay the draft drawn by Burg. Payment of the draft drawn by the King Trailer Company on the Denby Truck Company of Texas was also refused.

This suit was filed by the King Trailer Company against Hobby and Camp for the purchase price of the carload of trailers, based upon the order given by Burg. The Security National Bank of Dallas, the Southwest National Bank of Dallas, the Liberty Investment Company, S. W. Sibley, and J. W. Royall were made parties to the suit. Judgment was sought against all of the parties defendant except Hobby and Camp, upon the ground that the Security National Bank had converted the original draft and bill of lading. The Southwest National Bank was a successor to the Security National Bank, and the other parties were connected with the Security National Bank in a way not necessary to here consider.

Hobby and Camp answered by exceptions and a general denial, and specially pleaded that Burg was only an agent, and had no authority to make the order for the carload of trailers. They alleged that the partnership was formed for the purpose of dealing exclusively in Denby trucks, and that Burg, without their knowledge or consent, made the order for goods which he was not authorized to handle; that they did not know of any such transaction until some time after the draft had been transmitted and the shipment refused by Bevans & Co. The other parties put in issue by proper pleadings the facts upon which they were sought to be held liable.

At the conclusion of the testimony the court instructed a verdict in favor of the King Trailer Company against all the defendants for the full amount sued for.

There are two reasons urged by the appellee in support of the instructed verdict in this case. One is that the admitted facts show that if Burg did exceed his actual authority in ordering the carload of King trailers, he was nevertheless within the apparent scope of his agency. The other is that the Security National Bank became liable, as a matter of law, when, in legal effect, it surrendered the bill of lading to Burg without requiring payment of the draft attached.

It was admitted by both Hobby and Camp that they had turned the general conduct of the business affairs of the Denby Truck Company of Texas over to Burg. There was apparently no express limitation placed upon the authority he was to exercise. While the partnership was to buy and sell Denby trucks and establish subordinate agencies in Texas, there were no express restrictions imposed upon the legitimate enlargement of the business so as to exclude dealing in trailers which might be used in connection with Denby trucks. Burg testified:

"From the time that I became manager of the business of the Denby Truck Company of Texas my management of the business was not limited to the sale and purchase of Denby trucks from the Denby Truck Company; I sold and purchased other equipment, such as accessories and other things than Denby trucks. I bought trucks from the factory; I signed and sent the orders, and signed the letters ordering them. I bought and sold bodies for the trucks; you could not have the truck without the body that went with it to finish it. I also signed checks to pay for the goods. There was a relationship between the demand of my trade for Denby trucks without the cabs and bodies, and the sale or demand of Denby trucks with cabs and bodies. You cannot sell a truck without

a body; if you can do that you can do more than I can. We sold gas engines and mud chains, cabs, and bus bodies, King trailers."

That portion of Burg's testimony was not denied. Camp testified, among other things, as follows:

"When that copartnership was organized it was not contemplated or intended that it should engage in any other business. The Denby Truck Company of Texas had a man in its employ by the name of C. N. Burg, and he was employed at the time of the organization of the copartnership. He was employed to sell Denby trucks in the state of Texas, to organize district agencies, secure local dealers, and to promote the business of disposing of Denby trucks in the state of Texas in the manner and form agreed upon by us and the Denby Truck Company. Mr. Burg was not given authority to buy King trailers. He had no authority to buy and sell any other merchandise or goods than Denby trucks; he had no authority to do anything else except to carry out the contract with the Denby Truck Company of Detroit, Mich,. made with them for the Texas agency—the Texas business."

Again, he said:

"It is true that you might say that Mr. Burg was manager of the Denby Truck Company of Texas; he was supposed to be a truck man and running that business. He had entire control of the policies of the company except as to extending credit. He could establish branch agencies, take orders, secure a deposit with every order, and order from the Denby Truck Company of Detroit, Mich., trucks in carload lots. With reference to credits, he was to consult Mr. Hobby on any credits, but aside from Mr. Hobby's interest whenever credit should be extended, Mr. Hobby and I placed the entire conduct of the business in Mr. Burg's hands."

[1] If proper credence be given to the testimony of Hobby and Camp, the Denby Truck Company of Texas was formed for the sole purpose of dealing in Denby trucks by wholesale, and establishing local agencies in Texas. The proprietors had the right to place that limitation upon the enterprise which they placed under the management of Burg, and to restrict his authority accordingly. If such was the sole purpose of the partnership undertaking, then the agent had no authority to extend his purchases to commodities which did not come within the scope of the business intrusted to him. If the partnership had been formed to handle Denby trucks at retail the situation might be legally different, since the furnishing of trailers might encourage the purchase of trucks for actual use. But such an argument cannot apply with equal force when the dealing is by wholesale.

[2] In disposing of this appeal, where the judgment is based upon a peremptory instruction, we must assume that Burg did not have actual authority to purchase the car-load of trailers involved in this controversy. Counsel for appellee insists that if he did not have actual authority, he had apparent authority, and the judgment should be sustained upon that ground.

[3, 4] The judicial recognition of apparent authority, as the basis of liability of the principal for the unauthorized acts of his agent, rests upon the doctrine of equitable estoppel. Whether such an estoppel can be invoked depends upon the facts of each particular case. The state of the evidence in this suit is not such as to warrant the court in assuming as a matter of law that the agent of the King Trailer Company, who sold the goods to Burg, was misled by any apparent power conferred upon him by his principals. That issue, if essentially involved in the determination of the controversy, should have been submitted to the jury. Rail v. City Nat. Bank, 3 Tex. Civ. App. 557, 22 S. W. 865; Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824; Mechem on Agency, § 279; 21 Ruling Case Law, p. 854.

[5] The next question is, can the judgment be sustained on the second ground—that is, the conversion of the draft and bill of lading by the Security National Bank? Upon that issue the testimony was not conflicting, nor are the essential facts here disputed. When the draft drawn by the King Trailer Company upon the Denby Truck Company of Texas, with the accompanying bill of lading, was received by the Security National Bank, the latter became the collecting agent of the King Trailer Company. As such agent it was its duty, when payment was not made within a reasonable time after demand, to return the draft and the bill of lading to the drawer, or to the drawer's agent at Ann Arbor, Mich., or to give proper notice and ask for further instructions. But that was not done in this instance. Instead, the Security National Bank detached the original draft from the bill of lading, substituted one for a larger sum drawn by the Denby Truck Company of Texas on Bevans & Co., and forwarded the latter to Menard for collection. In doing this the bank became the collecting agent for the Denby Truck Company of Texas. If any money had been paid on this second draft, it would have been the property of the Denby Truck Company of Texas. While the bank might have applied a part of that money on the draft of the King Trailer Company, the authority to do so would have depended on the consent of the Denby Truck Company of Texas, given either before or after the collection was made. If the bank accepted the draft of the Denby Truck Company of Texas, drawn on Bevans & Co. in payment of the original draft drawn by the King Trailer Company, it violated its instructions and became responsible for any resulting loss. It had no authority to deliv-

er the bill of lading without payment, and no authority to accept payment in anything but money. If that be the legal construction of that transaction, then, logically, the bank is liable in this suit for a conversion. But in any event, by attaching the bill of lading to a draft payable to the Denby Truck Company of Texas, the bank authorized its correspondent to deliver the bill of lading upon payment of that draft, thus making the delivery of the goods subject to the order of the Denby Truck Company of Texas. The legal effect of the substitution of one draft for the other was to deliver the bill of lading and the goods it represented to the drawer of the second draft, the Denby Truck Company of Texas.

The record in this case shows that the draft drawn by the King Trailer Company on the Denby Truck Company was dated December 1, 1917, and was received for collection by the Security National Bank a few days later. The judgment in this suit was rendered on January 7, 1924, approximately six years after the draft was received at Dallas for collection. Neither the draft nor the bill of lading has ever been returned to the drawer, or its agent at Ann Arbor. Camp testified that in March, 1918, soon after he learned of the purchase of the King trailers by Burg, he sent the following telegram to the King Trailer Company:

"We hold state agency for Denby trucks. Mr. Burg without our knowledge or authority took order for carload of your trailers from W. P. Bevans, Menard, Texas, and ordered same from you in our trade-name, Denby Truck Company of Texas. This has just come to our knowledge. Also fact that Bevans refuses to accept shipment. The car is at Menard and has been for some time. Demurrage is accumulating. We suggest you make some disposition of car in order to minimize loss. We deny liability, but if we should be in error, Bevans is liable and is entirely solvent, and loss sustained can subsequently be placed where it belongs."

The wording of that message rather indicates that Camp regarded his company as then in control of the carload of trailers. Had that not been so, his offer tendering the goods back could have no legal effect. Both Hobby and Camp were interested in the Security National Bank at that time. Hobby was vice president and cashier, and Camp was a member of the board of directors. The record also shows that they have assumed whatever liability may be adjudged against the bank in this litigation. The action of the bank in adopting that method of collecting the draft, and in retaining control of the draft and bill of lading during that long period of time without undertaking to protect itself from liability, may find an explanation in that relationship and the personal guaranty of indemnity.

We are of the opinion that the judgment of the trial court should be affirmed on the ground that the Security National Bank became liable for the conversion of the draft and bill of lading, or the goods the latter represented. It is conceded that, if the Security National Bank was liable for a conversion, its successor and Hobby and Camp and the Southwest National Bank are liable in this suit.

The judgment is affirmed.